**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

In re:                         :       Chapter 13
     VIRGINIA HART          :
                            :
              Debtor    :       Bankruptcy No. 12-18545 AMC

## OPINION

### I. INTRODUCTION

During the sixteen (16) months prior to the filing of this Ch. 13 Debtor's Motion for Contempt Pursuant to 11 U.S.C. § 362(k) ("Contempt Motion"), the Debtor failed to take any legal action to stop M&T Bank's foreclosure of real property owned by JT&T Properties, LLC ("JT&T"), a non-debtor Pennsylvania limited liability company which was owned and operated by the Debtor as its sole member. Even after M&T Bank ("M&T") foreclosed on such real property, the Debtor failed to take any action.

In fact, the Debtor only filed the Contempt Motion after M&T filed a motion to lift the automatic stay to name the Debtor in its deficiency action against JT&T and to foreclose on the Debtor's personal residence. Unfortunately, the Debtor's about-face argument that she previously held a legal or equitable interest in JT&T's real property which constituted property of her estate under § 541 of the Bankruptcy Code, while creative, is unavailing.

Likewise, the Debtor's argument that the automatic stay should have been extended to JT&T is far beyond the time when such argument should have been made and is now moot since M&T has already foreclosed on JT&T's real property. As explained below, the Contempt Motion will be denied.

## II. UNDISPUTED FACTUAL HISTORY

### A. Background

On January 21, 2003, the Debtor formed JT&T, a Pennsylvania limited liability company, pursuant to an Operating Agreement. Debtor's Exhibit ("D-") 1. JT&T was created for the purpose of operating "'for profit' activities, including, but not limited to the purchase, renovation, resale, or rental of real estate." *Id.* ¶ 5.1. The Debtor acted as JT&T's manager and was the sole member of JT&T. *Id.* ¶ 2.3 and Schedule 3.1/4.1.

On April 13, 2006, the Debtor borrowed $100,000 from M&T Bank ("M&T") pursuant to a Business Loan Agreement and Promissory Note ("Loan"). M&T Exhibit ("M&T-") 1 and 2 and Stipulation of Facts and Exhibits ("Stip.") ¶ 13. On August 4, 2006, the Debtor and M&T entered into a Change in Terms Agreement ("First Amendment") which increased the principal amount under the Promissory Note from $100,000 to $700,000. M&T-3 and Stip. ¶ 14.

On the same date, JT&T entered into a Commercial Guaranty ("Guaranty") in favor of M&T which guaranteed the Debtor's obligation under the First Amendment. M&T-4 and Stip. ¶ 14. The Guaranty was secured by a mortgage on certain real property located at 266 Radnor Chester Road, a/k/a 3 Radnor Way, Radnor Township, PA ("LLC Real Property") which JT&T had simultaneously purchased on August 4, 2006. M&T-5 and Stip. ¶ 14. The LLC Real Property is a single family house. Stip. ¶ 14 and Transcript, p. 13.

On April 27, 2007, the Debtor and M&T entered into a second Change in Terms Agreement ("Second Amendment" and, collectively with the Loan and First Amendment, hereafter referred to as the "M&T Loan") which increased the principal amount under the Note from $700,000 to $750,000. M&T-6 and Stip. ¶ 15. The Second Amendment was

secured by a junior mortgage on the Debtor's principal residence located at 15 Radnor

Way, Radnor, PA ("Personal Residence").  M&T-7 and Stip. 15.

On July 28, 2008, JT&T entered into a lease of the LLC Real Property ("First Lease").

D-2.  Under the First Lease, JT&T was listed as both the landlord and the entity to whom

rental payments were to be delivered.  *Id.* ¶¶ 1 and 3.  On October 1, 2009, JT&T entered

into another lease of the LLC Real Property ("Second Lease").  D-3.  This time, however, the

Second Lease listed the Debtor as both the landlord and the person to whom rental

payments were to be delivered.  *Id.* ¶¶ 1 and 3.  On May 1, 2011, JT&T entered into a third

lease of the LLC Real Property ("Third Lease"), and the Debtor was again listed as both the

landlord and the person to whom rental payments were to be delivered.  D-4, ¶¶ 1 and 3.

On May 1, 2012, JT&T entered into a lease of the LLC Real Property ("Fourth Lease" and,

collectively with the First Lease, Second Lease and Third Lease, hereafter referred to as the

"Leases"), but this time JT&T was listed as the landlord and the Debtor was listed as the

person to whom rental payments were to be delivered.  D-5, ¶¶ 1 and 3.

### B.  Bankruptcy Filing

On September 10, 2012 ("Petition Date"), the Debtor filed a voluntary petition for

relief under chapter 13 of the Bankruptcy Code.  Stip. ¶ 8 and Dkt. 1.  The Debtor filed her

Schedules, Statement of Financial Affairs ("SOFA") and Plan on September 28, 2012.  Stip. ¶

17, M&T-10 and Dkt. 9 and 12.

On Schedule A, the Debtor listed her Personal Residence as the only real property

that she owned as of the Petition Date.  M&T-10 and Dkt. 9.  On Schedule B, the Debtor

listed her membership interest in JT&T and stated that JT&T "owns one piece of real estate

that has negative equity."  *Id.*  The Debtor did not list any other contingent or unliquidated

- 3 -

claim as of the Petition Date or any other personal property other than cash, funds in a

checking and savings account, household goods, books and pictures, clothing, jewelry and a

car. *Id.*

The only source of income listed for the Debtor on Schedule I was Debtor's wages

from her employment and an income tax refund that she received. *Id.* The Debtor did not

include any amount for regular income from operation of business or profession or farm

(Line 7) or for other income (Line 13). *Id.*

On Schedule J, the Debtor did not list any expense for taxes (not deducted from

wages or included in home mortgage payments) (Line 12), for regular expenses from

operation of business, profession, or farm (Line 16) or for other expenses (other than

M&T's second mortgage, haircuts and a sewer lien held by Radnor Township) (Line 17). *Id.*

In her SOFA, the Debtor stated that her only source of income from employment or

operation of business during the past 2 years was "wages" and that she did not receive any

other source of income for the past 2 years. *Id.* The Debtor failed to list any business

interest in which she owned at least a 5% or more of the voting or equity securities within

the past 6 years. *Id.*

On March 11, 2013, M&T filed an objection to the Debtor's Plan ("Plan Objection").

Dkt. 33. The Plan Objection was based upon the Debtor's alleged failure to address how

M&T's claim, and certain post-petition delinquencies related to M&T's claim, would be

satisfied under the Plan, and related feasibility issues.

On the same date, M&T filed a proof of claim ("M&T Claim") as a secured claim in the

amount of $752,175.38, which included a pre-petition delinquency of $4,289.96. Claims

Register No. 8-1. On April 5, 2013, M&T filed an amended proof of claim ("M&T Amended

Claim") as a secured claim in the amount of $754,574.84, which included a pre-petition

delinquency of $6,689.42.  Claims Register No. 8-2.

 The Debtor filed an objection to the Amended Claim ("Claim Objection") on June 6,

2013, based on the Debtor's belief that she did not miss any pre-petition mortgage

payments to M&T between June 2012 and September 2012. Dkt. 47.  On July 1, 2013, M&T

filed a response to the Claim Objection asserting that the Debtor was delinquent on two

post-petition mortgage payments to M&T. Dkt. 52.

On August 23, 2013, the Debtor filed a Praecipe to Withdraw her Claim Objection.

Dkt. 57.

On October 28, 2013, the Debtor filed an Amended Plan which identified M&T as a

secured creditor with an arrearage of $6,689.42. Dkt.  63.  The Amended Plan provided

that the arrearage would be paid to the chapter 13 trustee and that monthly payments

would be paid directly to M&T as they become due, rather than through the Amended Plan.

*Id.*

On November 12, 2013, M&T filed a Praecipe to withdraw its Plan Objection.  Dkt.

69. On November 15, 2013, the Debtor filed her Second Amended Plan. Dkt. 73.  On

December 11, 2013, an order was entered confirming the Second Amended Plan. Dkt. 77.

### C.  M&T Foreclosure on LLC Real Property

On August 13, 2013, M&T sent a Notice of Default and Demand ("Default Notice") to

the Debtor's Personal Residence which was addressed to the "Managing Member or

Director" of JT&T. M&T-12.  The Default Notice notified the Debtor, as sole member of

JT&T, that the Debtor had defaulted under the M&T Loan and demanded that JT&T

immediately pay all amounts due thereunder.  *Id.*  On November 20, 2013, M&T confessed

judgment against JT&T in the Delaware County Court of Common Pleas ("Delaware County Court"). Stip. ¶ 22.

The Delaware County Court subsequently notified the Debtor, in her capacity as the sole member of JT&T, of the confessed judgment against JT&T and set forth the procedure by which JT&T could object to the confessed judgment. Stip. ¶ 25. On December 23, 2013, M&T filed a petition to conform the confessed judgment against M&T ("Petition to Conform"), which was served on the Debtor in her capacity as the sole member of JT&T. Stip. ¶27. The Delaware County Court issued a Rule Returnable on January 2, 2014, which gave JT&T until January 13, 2014 to respond to the Petition to Conform. Stip. ¶ 28. On January 17, 2014, M&T served a Rule 237.1 Notice on the Debtor, in her capacity as the sole member of JT&T, notifying her that unless JT&T filed a written response within 10 days of the Rule 237.1 Notice, a default judgment would be entered against JT&T. Stip. ¶30.

On or about March 10, 2014, M&T filed a Praecipe to Enter Default Judgment on the Petition to Conform and requested that the Prothonotary issue a writ of execution against JT&T. Stip. ¶ 32. On March 10, 2014, a default judgment was entered against JT&T on the Petition to Conform. Stip. ¶ 33. On June 20, 2014, a sheriff's sale was conducted on the LLC Real Property. Stip. ¶ 36. M&T purchased the LLC Real Property at the sheriff's sale. Stip. ¶38.

### D.  M&T's Motion for Relief from the Automatic Stay

On October 23, 2014, M&T filed a motion for relief from the automatic stay ("Stay Relief Motion") in this proceeding seeking to name the Debtor in the deficiency action that M&T intended to file against JT&T in connection with the sheriff's sale of the LLC Real Property and to foreclose on the Debtor's Personal Residence. Stip. ¶ 1 and Dkt. 87. On

November 7, 2014, the Debtor filed a response to the Stay Relief Motion ("Response"). Stip.
¶ 2 and Dkt. 90.

On November 25, 2014, the Court held a hearing on the Stay Relief Motion and *sua
sponte* ordered the parties to submit briefing on whether M&T violated the automatic stay
when it foreclosed on the LLC Real Property and took title to the LLC Real Property at the
sheriff's sale on June 20, 2014. Dkt. 102. On December 9, 2014, the Debtor filed a Motion
for Contempt Pursuant to § 362(k) ("Contempt Motion"). Stip. ¶ 4 and Dkt. 113. On
December 16, 2014, M&T filed a Brief in Opposition to the Contempt Motion
("Opposition"). Stip. ¶ 5 and Dkt. 116. On January 13, 2015, the Court held a hearing to
determine whether M&T had violated the automatic stay when it foreclosed on the LLC
Real Property and took title to the LLC Real Property. Dkt. 121.

### III. FINDINGS OF FACT

The Court makes the following findings of fact based upon the testimonial and
documentary evidence presented at trial. In making these findings, the Court has
considered the demeanor of the Debtor, who was the only witness who testified, the
plausibility of her testimony, the existence of corroborating circumstantial, testimonial or
documentary evidence and the totality of the evidentiary record.

1.    On August 4, 2006, the Debtor paid the purchase price for the transfer of the
LLC Real Property to JT&T from funds in her personal bank account. Transcript, p. 15.

2.    The Debtor collected the monthly rental proceeds under each of the Leases of
the LLC Real Property -- $4,000 per month -- and deposited those funds in her personal
bank account. Transcript, p. 18.

3.      The Debtor made payments on the M&T Loan from funds in her personal bank account. Transcript, p. 16.

4.      The Debtor paid the real estate taxes, local school taxes, insurance and repair, maintenance and upkeep incurred in connection with the LLC Real Property out of her personal bank account.  Transcript, p. 16.

5.      The Debtor never resided at the LLC Real Property.  Transcript, p. 49.

## IV. DISCUSSION

In the Contempt Motion, the Debtor appears to make two legal arguments:  that (1) the LLC Real Property constituted property of the estate by operation of law under Pennsylvania's applicable dissolution statutes; and (2) the automatic stay applied to JT&T because the economic interests of the Debtor and JT&T were immediately and adversely affected by M&T's actions.  Within the first legal argument, the Debtor also includes arguments which have no relation to the Pennsylvania dissolution statutes.  Specifically, the Debtor argues that, as a result of her pre-petition and/or post-petition actions, she held a resulting trust in the LLC Real Property under Pennsylvania law as well as certain possessory rights, both of which constituted property of the Debtor's estate under § 541.

In its Opposition, M&T addresses the two primary arguments raised in the Contempt Motion, but essentially ignores the Debtor's albeit cursory resulting trust and possessory interests argument.  Instead, M&T appears to interpret those arguments as an attempt by the Debtor to reverse pierce JT&T's corporate veil.[1]  Because the Debtor did not

---

[1] M&T apparently was responding to the Debtor's assertion that she, "through her personal actions and conduct with respect to 3 Radnor Way created circumstances both pre- and post-petition which brings the property

raise such argument in her Contempt Motion or at the January 13, 2015 hearing, the Court

will not address that issue in this Opinion.

### A. The Debtor Did Not Possess Any Legal or Equitable Interest in the LLC Real Property

#### 1. Upon the Dissolution of JT&T, the Debtor Did Not Have Any Legal or Equitable Interest in the LLC Real Property

The Debtor argues that M&T violated the automatic stay when it foreclosed on the

LLC Real Property because the Debtor held certain legal and equitable interests in the LLC

Real Property which arose upon the Debtor's bankruptcy filing and constituted property of

the Debtor's estate under § 541 of the Bankruptcy Code.  Specifically, the Debtor argues

that her bankruptcy filing triggered a dissolution of JT&T under Pennsylvania law and that,

upon dissolution: (1) JT&T's right to use and enjoy the benefits of the LLC Real Property

terminated and vested with the Debtor; (2) the Debtor enjoyed equitable ownership of the

LLC Real Property subject to the M&T mortgage; and (3) legal title to the LLC Real Property

would have vested in Debtor had a certificate of dissolution been filed.  Contempt Motion

¶¶ 41 and 42.  During argument, the Debtor also asserted that she had a future possessory

interest in the LLC Real Property which would have arisen upon the filing of a certificate of

dissolution.  Transcript, p. 53.

The Debtor has not cited any cases in support of these legal arguments and, upon a

review of the relevant Pennsylvania statutes, it is clear that they are without merit.  At the

outset, it must be recognized that members of a limited liability company ("LLC") do not

have *any* interest in the specific assets owned by the LLC:

§ 8923. Property

---

into the Debtor's estate."  As noted above, it appears that this argument was actually made in connection with the Debtor's resulting trust and possessory interest arguments.

> (a)      General rule- Property transferred to or
> otherwise acquired by a limited liability company
> becomes property of the company. *A member has no
> interest in specific property of a company.*
> (b)      Title- Property may be acquired, held and
> conveyed in the name of a company.  Any estate in real
> property may be acquired in the name of the company,
> and *title to any estate so acquired shall vest in the
> company itself rather than in the members individually.*

15 Pa. C.S.A § 8923 (emphasis added).

Under Pennsylvania law, the dissolution of an LLC is triggered by, *inter alia*, the

filing of a bankruptcy petition by one of its members:

> § 8971. Dissolution
> (a) General rule.--A limited liability company is dissolved and its
> affairs shall be wound up upon the happening of the first to occur of the
> following events:
> ...(4) Except as otherwise provided in writing in the operating
> agreement, upon a member becoming a bankrupt...

15 Pa. C.S.A. § 8971(a)(4).

Upon the dissolution of the LLC, the members of the dissolved LLC are responsible

for winding up its affairs:

> § 8973. Winding up
> (a) General rule.--Except as provided in subsection (b) and unless
> otherwise provided in the operating agreement, the affairs of a limited
> liability company shall be wound up by the managers or, if none, by:
> (1) the members who have not wrongfully dissolved the company...

15 Pa. C.S.A. § 8973(a)(1).

As part of the winding up process, the assets of the LLC are liquidated and

distributed to creditors and, if remaining assets exist, to members and equity holders:

> § 8974. Distribution of assets upon dissolution
> (a) General rule.--In settling accounts after dissolution, the liabilities
> of the limited liability company shall be entitled to payment in the
> following order:

(1) Those to creditors, including members or managers who are creditors, in the order of priority as provided by law, in satisfaction of the liabilities of the company, whether by payment or the making of reasonable provision for payment thereof, other than liabilities for distributions to members under section 8932 (relating to distributions and allocation of profits and losses) or 8933 (relating to distributions upon an event of dissociation).
(2) Unless otherwise provided in the operating agreement, to members and former members in satisfaction of liabilities for distributions under section 8932 or 8933.
(3) Unless otherwise provided in the operating agreement, to members in respect of:
(i) Their contributions to capital.
(ii) Their share of the profits and other compensation by way of income on their contributions.

15 Pa. C.S.A § 8974(a)(1) – (a)(3).

Upon completion of the winding up process, a certificate of dissolution of the LLC is

executed:

> § 8975. Certificate of dissolution
> (a) General rule.--When all debts, liabilities and obligations of the limited liability company have been paid and discharged or adequate provision has been made therefor and all of the remaining property and assets of the company have been distributed to the members, a certificate of dissolution shall be executed by the company.

15 Pa. C.S.A. § 8975(a).

Once the certificate of dissolution of the LLC is filed, the LLC ceases to exist and, to

the extent that any administrative actions must be taken on behalf of the LLC thereafter,

the member may take such action in the capacity of a trustee for the creditors of the LLC:

> § 8976. Effect of filing certificate of dissolution
> (a) General rule.--Upon the filing of a certificate of dissolution, the existence of the limited liability company shall cease...
> (b) Postfiling administration.--The manager or managers in office at the time of dissolution or the survivors of them or, if management of the company is retained by the members, then *all members shall thereafter be trustees for the members and creditors of the dissolved company* and as such shall have authority to distribute any

> company property discovered after dissolution, convey real estate
> and take such other action as may be necessary on behalf of and in
> the name of such dissolved company.

15 Pa. C.S.A. § 8976(a) and (b) (emphasis added).

The 1994 Committee Comments on § 8976 confirm that, during the winding up

process, the member of a dissolved LLC acts as a trustee for the creditors of the LLC:

> Subsection (a) is a specific application in the context of limited
> liability companies of the general principle in 15 Pa. C.S. § 8352
> that upon dissolution a partnership "is not terminated but
> continues until the winding up of partnership affairs is
> completed." In the normal case, there is thus a three stage
> process at the end of the existence of a limited liability
> company: first, there is a dissolution of the company for one of
> the reasons listed in 15 Pa. C.S. § 8971…; second, dissolution is
> followed by the winding up process; and, finally, when the
> winding up process has been completed, a certificate of
> dissolution is filed which ends the existence of the company.
>
> *The principle of subsection (b) is applicable not just after the
> filing of a certificate of dissolution, but at all times during the
> winding up process since it becomes applicable upon dissolution.*
> (emphasis added).

Based upon the foregoing, it is clear that, prior to dissolution, members do not have

any interest in the specific assets of an LLC. Likewise, upon dissolution, the members of a

dissolved LLC hold no legal or equitable rights in the LLC's specific assets. Rather, the

members responsible for winding up the affairs of the dissolved LLC act as trustees for the

creditors of the LLC and are charged with liquidating the assets of the LLC in order to pay

the creditors of the LLC in order of priority. Only after all claims of the LLC's creditors are

satisfied do members have any right to receive distributions on account of their interests in

the LLC.

Accordingly, prior to the Debtor's bankruptcy filing, she did not have an interest in

the LLC Real Property. Upon the Debtor's bankruptcy filing, JT&T was dissolved. No

further action was taken by the Debtor in connection with the dissolution process. As a result, JT&T continued in existence and, as of this date, is still in existence under Pennsylvania law. Under Pennsylvania law, JT&T was the legal owner of the LLC Real Property until the property was foreclosed upon, and Pennsylvania law did not provide the Debtor with any legal or equitable interest in the LLC Real Property either before or after her bankruptcy filing.

Indeed, even if the Debtor had actually wound up the affairs of JT&T and undertook to sell the LLC Real Property, she would have done so as a trustee for JT&T's creditors and would not have held any ownership or equitable interest in the LLC Real Property.

Thus, under applicable Pennsylvania law and contrary to the Debtor's unfounded legal arguments, it is clear that JT&T's dissolution did not give the Debtor any right to use and enjoy the benefits of the LLC Real Property or any equitable ownership rights in the LLC Real Property. In fact, upon the hypothetical filing of a certificate of dissolution for JT&T, the Debtor would not have obtained legal title to, or a possessory interest in, the LLC Real Property. Rather, she would merely have received the net proceeds, if any, from the sale of the LLC Real Property after M&T's Loan was satisfied.

Based upon Schedule B, which recognizes that the Debtor's membership interest in JT&T had "negative value" because there was no equity in the LLC Real Property (which was JT&T's only asset), and the fact that M&T is pursuing a deficiency claim against JT&T in connection with its foreclosure of the LLC Real Property, the Court finds that the Debtor's membership interest in JT&T has no value. Thus, even if a certificate of dissolution had been filed for JT&T, the Debtor would not have received any proceeds since the value of

JT&T's only asset, the LLC Real Property, was less than the amount owed by JT&T to M&T under its Guaranty of the M&T Loan.

> **2.    A Resulting Trust Never Arose in Favor of the Debtor Because, at the Time that the LLC Real Property Was Conveyed to JT&T, the Debtor Had No Intent to Create a Resulting Trust**

The Debtor argues that M&T violated the automatic stay under § 362 when it foreclosed on the LLC Real Property because, under Pennsylvania law, she held a beneficial or possessory interest in the LLC Real Property which constituted property of the estate under § 541(a).  Contempt Motion, ¶ 45 and Transcript, p. 54.  Specifically, the Debtor argues that she held a resulting trust in the LLC Real Property under Pennsylvania law because, at the time that the LLC Real Property was conveyed to JT&T, she paid the purchase price for the LLC Real Property.  *Id.*

Section 541 of the Bankruptcy Code, which defines "property of the estate," provides that the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a).  The determination as to whether a debtor's property rights become part of the bankruptcy estate under § 541 is made under applicable nonbankruptcy law.  *See In re Irwin,* 509 B.R. 808, 816 (Bankr. E.D. Pa. 2014). *See also In re Stewart*, 368 B.R. 445, 450 (Bankr. E.D. Pa. 2007) (*citing Butner v. United States*, 440 U.S. 48, 55 (1979)); *In re Brannon*, 476 F.3d 170, 176 (3d Cir. 2007).

Here, Pennsylvania law applies to determine what comprises the Debtor's bankruptcy estate under § 541.  The Debtor argued in her Contempt Motion, and at the hearing on that Motion, that based upon her payment of the purchase price for the LLC Real Property, she possessed a beneficial or possessory interest in a resulting trust which arose under Pennsylvania law at the time that JT&T took title to the LLC Real Property.

- 14 -

Under Pennsylvania law, "'[w]here a transfer of property is made to one person and the purchase price is paid by another a resulting trust arises in favor of the person by whom the purchase price is paid. . .'" Restatement (Second) of Trusts § 440 (1959). However, "no resulting trust arises 'if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise.'" *Masgai v. Masgai*, 333 A.2d 861, 864 (Pa. 1975) (*quoting* Restatement (Second) of Trusts § 441).

The Pennsylvania Supreme Court has held that the burden of proof to establish a resulting trust is high:

> One who seeks to establish the existence of a resulting trust bears a heavy burden of proof; the evidence must be 'clear, direct, precise, and convincing.'...This Court has held that 'unless the evidence of the existence of an oral trust is of the highest probative value, equity should not act to convert an absolute ownership into an estate of lesser quantity.'...The facts and circumstances from which a court may find a resulting trust should be of no lesser probative value.

*Id.* at 865 (citation omitted).

In addition, the person asserting the existence of a resulting trust must do so within 5 years of the creation of the trust:

> The following actions and proceedings must be commenced within five years:..(3) An action to enforce any equity of redemption or any implied or resulting trust as to real property.

42 Pa. C.S.A. § 5526.

The Third Circuit has held that § 5526 "is a statute of repose which was intended to insure greater certainty of title and make more secure the enjoyment of real estate against a claim based upon an 'implied trust'." *Proctor v. Sagamore Big Game Club*, 265 F.2d 196, 202 (3d Cir.), *cert. denied*, 361 U.S. 831 (1959) (citations omitted.)  Citing to the

predecessor of § 5526 which contained an exception for fraud (that subsequently has been

deleted), the Third Circuit explained that:

> Once a constructive trust has arisen, even the ignorance of the
> beneficiary of his rights will not toll the period of limitation
> fixed by 12 P.S. 83 unless the trust was the result of a fraud.
> The statute says as much.

*Id.*

The Third Circuit has recognized that "[s]tatutes of repose, unlike most statutes of

limitations, start to run . . . at the completion of certain conduct by the defendant.  Whereas

a claim under a statute of limitations accrues when a plaintiff either suffers or discovers the

harm complained of, '[s]tatutes of repose by their nature [ ] impose on some plaintiffs the

hardship of having a claim extinguished before it is discovered, or perhaps before it even

exists. . . .'"  *Luzadder v. Despatch Oven Company*, 834 F.2d 355, 358 (3d Cir. 1987) (*quoting*

W. Keeton, Prosser and Keeton on Torts § 30, p. 168 (5th Edition 1984)).  *See also Vargo v.*

*Koppers Company Inc.*, 715 A.2d 423, 426, n.1 (Pa. 1998) ("[U]nlike a statute of limitations,

a statute of repose is not waived if not pled as an affirmative defense.").

Here, the Debtor has not met her heavy burden of proof to demonstrate that she

intended to create a resulting trust.  Although she testified that she paid the purchase price

for the LLC Real Property directly from the proceeds of the M&T Loan, she also

acknowledged that she intended to have JT&T hold title to the LLC Real Property.  When

asked why she did not purchase the LLC Real Property in her own name, she responded

that she was "advised by a lawyer that it was a good idea to put it into a separate entity to

protect your personal property in case anything went wrong."  Transcript, Jan. 14, 2015, p.

48.  Thus, the Debtor had no intention of creating a resulting trust in the LLC Real Property

- 16 -

and affirmatively elected to place title to the LLC Real Property in the name of JT&T in

order to protect her own assets.

In addition, the Debtor's actions in, and outside of, her bankruptcy proceeding

confirm that she did not intend to create a resulting trust:

- Schedule A did not list the LLC Real Property or any beneficial interest in the LLC Real Property.

- Schedule B failed to list any beneficial interest in the LLC Real Property and only listed her membership interest in JT&T.

- Beginning in August 2013, when M&T declared a default under JT&T's Guaranty, confessed judgment against JT&T and scheduled a sheriff's sale of the LLC Real Property, the Debtor failed to take any action to enforce her alleged interest in the LLC Real Property.

- The first time that the Debtor suggested the possibility of the existence of a resulting trust in the LLC Real Property was on December 9, 2014, when she filed the Contempt Motion.

For all of these reasons, it is clear that the Debtor did not intend to create a resulting

trust in the LLC Real Property when she paid the purchase price for that property. Rather,

based upon all of the evidence submitted on this point, the Court finds that: (1) the Debtor

specifically intended for JT&T to be the owner of the LLC Real Property in order to shield

herself from any liabilities incurred by JT&T in connection with the ownership of the LLC

Real Property and (2) the Debtor paid the purchase price for the LLC Real Property in her

capacity as sole member of JT&T.

Indeed, even if the Debtor had intended to create a resulting trust in the LLC Real

Property, she is barred by § 5526 from enforcing her alleged interest in such a trust. The

Debtor first raised this issue when she filed her Contempt Motion on December 9, 2014,

more than eight (8) years after JT&T obtained title to the LLC Real Property on August 4, 2006.

For the reasons discussed above, the Court holds that the Debtor never held a resulting trust in the LLC Real Property. Therefore, M&T did not violate the automatic stay when it foreclosed on the LLC Real Property.

### 3. The Debtor Did Not Hold Any Possessory Interest in the LLC Real Property

The Debtor also argues that she had a possessory interest in the LLC Real Property as a result of her receipt of rental payments under the leases, her declaration of such payments as personal income for tax purposes and the fact that she took financial responsibility to maintain, insure and pay taxes on the LLC Real Property. Contempt Motion ¶¶ 53-55. As legal support for this argument, the Debtor cites a case related to resulting trusts and *In re Atlantic Business and Community Corporation*, 901 F.2d 325 (3d Cir. 1990) which held that certain possessory interests in real property, without accompanying legal title, may constitute property of the estate under § 541.

In *Atlantic Business*, the debtor was considered a tenant at sufferance because it had entered into possession of certain premises and equipment with the owner's permission but without any written documentation supporting the debtor's use of such property. *Id.* at 326. After the debtor filed for bankruptcy, the owner of the premises sought to evict the debtor and changed the locks on the premises while the debtor was operating there. *Id.* After the bankruptcy trustee filed a contempt motion against the owner for violation of the automatic stay, the owner of the premises continued to try to gain possession of the premises by installing larger locks on the doors of the premises.

The Third Circuit ultimately found that the debtor's possession of a tenancy at

sufferance created a property interest under § 541 which was protected under § 362 and

held that:

> The language of Section 362 makes clear that mere possession
> of property at the time of filing is sufficient to invoke the
> protections of the automatic stay. The record reveals that at
> the time of filing the Chapter 11 petition the debtor was
> effectively in possession of the radio station and transmitter
> with [the owner's] permission, and therefore had an interest in
> property protected by section 362(a)(3).

*Id.* at 328.

Here, unlike the debtor in *Atlantic Business,* the Debtor <u>never</u> had possession of the

LLC Real Property.  Rather, the Debtor specifically testified that she never resided at such

property.  In fact, as of the Debtor's bankruptcy filing, the LLC Real Property was leased by

JT&T to a third party under the Fourth Lease.  In addition, on her voluntary petition, the

Debtor listed her Personal Residence as the address at which she resided.   The Debtor has

failed to provide any facts in support of her allegation that she was in possession of the LLC

Real Property; to the contrary, the evidence clearly demonstrates that there was a third

party tenant in possession of the LLC Real Property at the time of the Debtor's bankruptcy

filing.

Furthermore, under Pennsylvania law, possession has been defined as actual

physical control or occupancy of property by one who holds for himself.  *See Charles D.

Stein Revocable Trust v. General Felt Industries*, 749 A.2d 978, 981 (Pa. Super. 2000).  *See

also* Webster's Third New International Dictionary, Unabridged 1770 (1976) (defining

"possession" as "actual physical control or occupancy of property by one who holds for

himself and not as a servant of another without regard to his ownership and who has legal

rights to assert interests in the property against all others having no better right than himself").

It is clear that the Debtor never occupied or had actual physical control of the LLC Real Property.   Rather, at the time of the Debtor's bankruptcy filing and as evidenced under the Fourth Lease, the tenant named in the Fourth Lease occupied the LLC Real Property and JT&T, as landlord of the LLC Real Property, had physical control of the LLC Real Property.

In addition, although it appears that the Debtor failed to observe certain corporate formalities in the operation of JT&T, as evidenced by her inconsistent reference to the landlord under the Leases, her deposit of rental payments under the Leases to her personal bank account and not JT&T's bank account and her payment of certain expenses of JT&T, the Court finds that there is insufficient evidence to suggest that the Debtor took any of these actions in her personal capacity.  Rather, the Court finds that the Debtor took all of these actions in her capacity as sole member and manager of JT&T.

Furthermore, the Debtor's decision to create JT&T as a separate corporate entity in order to protect her own assets from JT&T's liabilities contradicts and undermines the argument that she makes here.  As observed by the Pennsylvania Supreme Court,

> [i]n our view, one cannot choose to accept the benefits incident to a corporate enterprise and at the same time brush aside the corporate form when it works to their (shareholders') detriment. The advantages and disadvantages of the corporate structure should be seriously considered and evaluated at the time such organization is contemplated and after incorporation has been selected, the shareholders cannot be heard to argue that the courts should not treat them as a corporation for some purposes and as a corporation for other purposes, whichever suits their present economic interest.

*Sams v.* Redev. *Auth. of the City of Kensington*, 244 A.2d 779, 781 (Pa. 1968).

- 20 -

Based upon the foregoing, the Court concludes that the Debtor did not hold any possessory interests in the LLC Real Property and that M&T did not violate the automatic stay when it foreclosed upon the LLC Real Property.

## B. Extension of the Automatic Stay to JT&T

Finally, the Debtor argues that M&T violated the automatic stay when it confessed judgment against JT&T and conducted a sheriff's sale on the LLC Real Property because: (1) such actions diminished the value of the Debtor's estate, and (2) the relationship between the Debtor and JT&T were so intertwined that an action against JT&T was, in reality, an action against the Debtor.

The Debtor argues that M&T's actions, which ultimately culminated in the foreclosure of the LLC Real Property, diminished the value of the Debtor's estate because she was unable to use the rental proceeds from the Fourth Lease of the LLC Real Property to pay off M&T's claim in her bankruptcy proceedings. The Debtor also argues that M&T's pursuit of a deficiency action against her pursuant to the M&T Stay Relief Motion in connection with its foreclosure of the LLC Real Property demonstrates the substantial and intertwined relationship that exists between JT&T and the Debtor.

The Third Circuit has held that "[a]lthough the scope of the automatic stay is broad, the clear language of section 362(a) stays actions only against a 'debtor'." *McCartney v. Integra National Bank North*, 106 F.3d 506, 509 (3d Cir. 1997). In addition, "[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991) (*quoting Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194,

- 21 -

1196-97 (6th Cir. 1983)); *see also Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121-22 (4th

Cir. 1988) (enforcing a judgment entered against a nondebtor guarantor of a note during

corporate obligor's bankruptcy proceeding). The Third Circuit has explained that "a

primary rationale for refusing to extend the automatic stay to nonbankrupt third parties is

to insure that the creditors obtain 'the protection they sought and received when they

required a third party to guaranty the debt.'" *McCartney*, 106 F.3d at 510 (*quoting Credit

Alliance*, 851 F.2d at 121).

Nevertheless, courts in the Third Circuit have extended the automatic stay to

nondebtor third parties in "unusual circumstances," such as:  where "'there is such identity

between the debtor and the third-party defendant that the debtor may be said to be the

real party defendant and that a judgment against the third-party defendant will in effect be

a judgment or finding against the debtor'" or where "stay protection is essential to the

debtor's efforts of reorganization." *Id.* (citations omitted.)

There has been some ambiguity regarding the statutory basis for requesting the

extension of the automatic stay to nondebtor third parties.  The court in *Standard v.

Foamex*, 2009 WL 1033607, *1, n.7 (E.D. Pa. 2009), noted that "it is unclear whether the

Third Circuit views staying an action to aid a debtor's reorganization the result of

extending the § 362(a) stay or the result of issuing a separate injunction pursuant to, for

example, a district court's inherent power to stay a pending action or a bankruptcy court's

power under § 105(a)."  However, the court ultimately concluded that "[t]his issue is

academic, however, as the practical effect (i.e., the staying of an action) is the same

regardless of the means employed." *Id.* By way of background, the *Standard* court

explained that:

- 22 -

*McCartney* court's use of the phrase "applied the automatic
stay protection" seemingly refers to an extension of the
automatic stay to non-debtors. The courts cited by *McCartney*,
however, relied on 11 U.S.C. § 105(a), not § 362(a), to enjoin
the actions against the non-bankrupt parties. See § 105(a)
(granting bankruptcy court power to "issue any order, process,
or judgment that is necessary or appropriate to carry out the
provisions of this title"); see generally *Patton v. Beardon*, 8 F.3d
343, 349 (6th Cir.1993) (reviewing several courts that
extended a stay to non-bankrupt parties and recognizing that
"such extensions [of the stay], although referred to as
extensions of the automatic stay, were in fact injunctions
issued by the bankruptcy court").

*Id.*

Many courts accordingly have held that a party must file an adversary complaint

seeking the entry of a separate injunction under § 105(a) in order to stay litigation against

nondebtor third parties.  *See In re Irwin*, 457 B.R. 413, 423 (Bankr. E.D. Pa. 2011) (finding

that the extension of the automatic stay to nondebtor third parties "does not flow

automatically from § 362(a)" and requires the filing of an adversary proceeding); *In re

Union Trust Philadelphia, LLC,* 465 B.R. 765, 771 (Bankr. E.D. Pa. 2011) ("most courts

consider Section 105 of the Code as the appropriate source of authority from which to

fashion injunctive relief restraining the prosecution of third-party litigation"); *In re Union

Trust Philadelphia, LLC,* 460 B.R. 644, 652 (E.D. Pa. 2011) (*citing In re Philadelphia

Newspapers, LLC*, 407 B.R. 606, 611 (E.D. Pa. 2009)) ("A three-step analysis is required to

determine whether the Bankruptcy Court properly issued a preliminary injunction

extending the § 362(a) automatic stay to the non-debtor third parties in this matter.").

In this case, the Court holds that, in order for the Debtor to have obtained the

protections of the automatic stay under § 362(a) to stay M&T's confession of judgment

action against JT&T and the foreclosure of the LLC Real Property, she needed to

affirmatively request such relief by filing an adversary complaint seeking an injunction under § 105(a) to extend the automatic stay to the proceedings against JT&T.  Having failed to do so, the automatic stay was never extended to stay the confession of judgment against JT&T or the foreclosure of the LLC Real Property.  At this point in time, M&T has prevailed in its state court actions against JT&T and has obtained title to the LLC Real Property.  Although the Debtor now seeks to extend the protections of the automatic stay to JT&T, the request is too late -- it is, in fact, moot, since M&T has already confessed judgment against JT&T and gained title to the LLC Real Property through the sheriff's sale.

Therefore, protections of the automatic stay never extended to JT&T and the stay did not preclude the confession of judgment and foreclosure actions filed against it by M&T.  As a result, M&T did not violate the automatic stay when it foreclosed on the LLC Real Property.

## V. CONCLUSION

For these reasons, the Contempt Motion will be denied.  An appropriate order follows.

Date: March 4, 2015

_____
Ashely M. Chan
United States Bankruptcy Judge

Copies to:

Edward J. Carreiro, Jr., Esquire
The Law Office of Edward J. Carreiro, Jr.
262 Bethlehem Pike, Suite 102
Colmar, PA 18915

William D. Schroeder, Jr., Esquire

The Law Office of William D. Schroeder, Jr.
262 Bethlehem Pike, Suite 102
Colmar, PA 18915

Kathryn E. Perkins, Esquire
Rona J. Rosen, Esq.
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103

Jack Miller
Chapter 13 Trustee
111 South Independence Mall
Suite 583
Philadelphia, PA 19106